[Cite as *State. Todd*, 2017-Ohio-4355.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 6-16-11

    v.

THOMAS JOSEPH TODD,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 2016 2083

Judgment Affirmed

Date of Decision: June 19, 2017

APPEARANCES:

    *Michael J. Short* for Appellant

    *Jason M. Miller* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Thomas Joseph Todd, appeals the November 8, 2016 judgment of the Hardin County Court of Common Pleas journalizing his conviction by a jury for four counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4), each a felony of the third degree, and one count of Disseminating Matter Harmful to Juveniles, in violation of R.C. 2907.31(A)(1),(F), a felony of the fourth degree, and sentencing him to a non-mandatory aggregate prison term of twelve years. On appeal, Todd assigns as error his claim that the jury's verdict convicting him of the offenses is against the manifest weight of the evidence, and his claim that the broad range of dates used by the prosecutor in the indictment and bill of particulars prejudiced the preparation of his defense.

*Procedural History*

{¶2} On June 20, 2016, the Hardin County Grand Jury returned a sixteen count indictment against Todd alleging that he committed nine counts of Gross Sexual Imposition involving sexual contact with a person less than thirteen years of age, in violation of R.C. 2907.05(A)(4), each a felony of the third degree, three counts of Attempted Rape of a person less than thirteen years old, in violation of R.C. 2923.02(A) and 2907.02(A)(1)(b), each a felony of the second degree and with the specification that Todd "was sixteen years of age or older at the time of the commission of the offense and that, had the offender completed the rape that was

attempted, the offender would have been guilty of a violation of Division (A)(1)(b) of § 2907.02 of the Revised Code." *See* R.C. 2941.1418. The indictment also alleged that Todd committed one count of Contributing to the Unruliness of a Child, in violation of R.C. 2919.24(A)(2), a misdemeanor of the first degree, two counts of Disseminating Matter Harmful to Juveniles, in violation of R.C. 2907.31(A)(1), (F), both felonies of the fourth degree, and one count of Rape of a person less than thirteen years of age, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Todd subsequently pled not guilty to the charges in the indictment.

{¶3} On July 11, 2016, the prosecution filed a bill of particulars upon Todd's request.

{¶4} On September 29 and 30, 2016, the trial court conducted a two-day jury trial. The State presented the testimony of six witnesses including the testimony of twelve-year-old A.D., the alleged victim in the case. After the presentation of the State's case-in-chief, Todd moved for acquittal on all counts pursuant to Crim.R. 29 and raised an issue regarding the lack of specificity of the dates for when the charged offenses allegedly took place in the indictment and bill of particulars. The trial court granted Todd's Crim.R. 29 motion on Count One of the indictment, second degree Attempted Rape, and dismissed the charge. The State also moved to dismiss Count Three, Gross Sexual Imposition, Count Six, Gross Sexual Imposition, and Count 11, Attempted Rape.

{¶5} The remaining twelve counts listed in the indictment proceeded to the jury for deliberation. The jury found Todd guilty of four counts of Gross Sexual Imposition and one count of Disseminating Matter Harmful to Juveniles. The jury returned a verdict of not guilty on the other seven counts. The trial court subsequently imposed a non-mandatory aggregate prison term of twelve years.

{¶6} Todd filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE CONVICTIONS ARE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR NO. 2

**THE DEFENDANT WAS DENIED DUE PROCESS BECAUSE THE INDICTMENT AND BILL OF PARTICULARS WAS [SIC] INSUFFICIENTLY SPECIFIC AS TO DATES OF THE ALLEGED OFFENSES**.

*First Assignment of Error*

{¶7} In his first assignment of error, Todd argues that the jury's convictions are against the manifest weight of the evidence. Specifically, Todd claims that the jury lost its way in finding A.D.'s testimony credible to convict him of four counts of Gross Sexual Imposition and one count of Disseminating Matter Harmful to Juveniles.

*Standard of Review*

**{¶8}** In reviewing whether the trial court's judgment was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387.

**{¶9}** "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " (Emphasis omitted.) *Id.*, quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶10}** Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is

required." *Thompkins* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

*Relevant Statutes*

{¶11} Todd was convicted of four counts of Gross Sexual Imposition, which is codified in R.C. 2907.05(A)(4), and reads, "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * * The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶12} "Sexual Contact" is statutorily defined in R.C. 2907.01(B) as meaning "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Whether touching is done for the purpose of sexual gratification is a "question of fact to be inferred from the type, nature, and circumstances surrounding the contact." *In re K.C.*, 1st Dist. Hamilton No. C-140307, 2015-Ohio-1613, ¶ 32.

{¶13} Todd was also convicted of Disseminating Matter Harmful to Juveniles, which is codified in R.C. 2907.31(A)(1),(F), and reads "(A) No person, with knowledge of its character or content, shall recklessly do any of the following

-6-

* * * (1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles." The relevant part of subsection (F) further provides, "Whoever violates this section is guilty of disseminating matter harmful to juveniles. * * * If the material or performance involved is obscene and the juvenile to whom it is sold, delivered, furnished, disseminated, provided, exhibited, rented, or presented, the juvenile to whom the offer is made or who is the subject of the agreement, or the juvenile who is allowed to review, peruse, or view it is under thirteen years of age, violation of this section is a felony of the fourth degree."

### *Evidence Presented*

{¶14} The evidence adduced at trial revealed that A.D. (born in 2004) and her family, who included both parents and five other siblings, moved into a family friend's home in Kenton, Ohio, for a period of time. A.D. recalled that this move occurred just as the school year was ending in the Summer of 2015. Todd and his son lived with this family friend, who also had four children of her own living in the home. A.D. testified that shortly after meeting Todd, he asked her to come into his bedroom to play video games and showed her a rifle case. A.D. recalled Todd

pointing to the rifle case and threatening to kill her and her family if she did not comply with his demands.

{¶15} A.D. testified to a series of episodes with Todd that occurred in the Summer of 2015, the Fall of 2015 and the Spring of 2016, during which she claimed Todd touched her inappropriately, made lewd sexual advances toward her, masturbated in front of her, forced her to perform oral sex on him, and made her watch "adult films." (Tr. Trans. Vol. 1 at 55).

{¶16} Because the jury found Todd guilty of five of the charges and acquitted him of the other seven charges, for economy purposes, we will only address the evidence relating to the counts for which Todd was convicted.

*Count Four—Gross Sexual Imposition*

{¶17} The record establishes that in the Fall of 2015, A.D. and her family moved out of the family friend's home in Kenton and relocated to nearby Patterson, Ohio, where the family lived for three to four months. A.D.'s parents worked during the day and they asked Todd to live with them so that he could watch the children while they were at work. Todd was the only adult living in the home besides A.D.'s parents. A.D. described a game that Todd played with the children called "tickle time," where he chased the children around the house and tickled them. A.D. recalled that during one of these tickle times incidents, Todd "kicked out" the other children in the room and proceeded to show her "bad movies" on his

tablet. (Tr. Trans. Vol. 1 at 24). A.D. testified that Todd also touched her "bad area" or "private area" above her clothes.[1] (*Id*. at 26).

### *Count Five—Gross Sexual Imposition*

**{¶18}** A.D. testified that in the Fall of 2015 at the Patterson home, she entered the kitchen early one morning as Todd was making breakfast. A.D. recalled that as she was helping to prepare breakfast, Todd walked up from behind her and touched her "butt" and her "front," "private area." (Tr. Trans. Vol. 1 at 28). She noted that everyone else in the household was either in the other room or sleeping at the time.

### *Count Nine—Gross Sexual Imposition*

**{¶19}** A.D. testified to a series of incidents that occurred in the Fall of 2015, during which Todd touched her inappropriately and told her to "shut up" as she tried to kick him away. A.D. provided the details of one particular incident in the first interview she did with Patricia Knippen, the Hardin County Children Services Administrator.[2] A.D. stated that the incident happened when she was laying down in her bedroom. She recalled Todd putting his hand down her pants, spreading "it" with his fingers, telling her to "shut up," and attempting to insert his pinky finger

---

[1] At trial, the prosecution introduced anatomical sketches depicting an unclothed adult male and an unclothed adolescent female. A.D. identified the "private area" on the female as the breast, vaginal and buttock areas. She also identified the penis on the male drawing, which she referred to as a "pickle."

[2] The playing of this video for the jury, which we will later discuss in detail, was not objected to by defense counsel and instead was played at the defense's insistence that it, over Ms. Knippen's testimony, was the best evidence of what was said during Ms. Knippen's first interview with A.D.

-9-

into her vagina.[3]  She explained that she kicked and pushed him away before he could insert his finger.  (State's Ex. 4 at 22:30).

*Count Thirteen—Gross Sexual Imposition*

{¶20} A.D. recalled accompanying Todd to his trailer in Kenton in the Spring of 2016.  Todd had arranged to meet a friend at his trailer to fix a leak in the floor. Todd brought A.D. and her brother to help.  At some point, A.D.'s brother went home and Todd's friend walked away from the trailer.  A.D. testified that Todd brought her into his bedroom in the trailer and told her to take off her clothes.  She complied with Todd's demand because she noticed the rifle behind the water heater. Todd proceeded to show A.D. pornography on his tablet and then touched her "boobs" and her "private area."  (Tr. Trans. Vol. 1 at 56).

*Count Fifteen—Disseminating Matter Harmful to Juveniles*

{¶21} A.D. described the "bad movies" that Todd showed her as containing "sex stuff" between a man and a woman.  She recalled watching the videos on the PlayStation and Todd's tablet.  (Tr. Trans. Vol. 1 at 55).  A.D. remembered Todd masturbating next to her while watching the videos.  She recalled seeing his hand move "up and down" under a blanket and then observed him deposit his sperm or "white stuff" into a sock.  A.D. testified that Todd used these movies to explain to

---

[3] A.D. clarified that "it" referred to her "private" or vagina. (State's Ex. 4 at 20:35).

her different sexual conduct such as a "69" sex position and a "blow job." (*Id*. at 31, 60).

{¶22} A.D. testified that over the course of her interactions with Todd, he touched her inappropriately twenty to thirty times over her clothes. In her testimony describing each incident A.D. explained that she complied with Todd's sexual advances because she remembered the threat he made against her and her family and knew he owned a firearm. A.D. recognized that there were two sides to Todd, a good side and a bad side, and acknowledged that she liked the good side. She described Todd as giving her positive attention and buying her presents, such as coloring books, which was in stark contrast to A.D.'s relationship with her own father, whom she described as physically abusive.

{¶23} A.D.'s testimony regarding many of the incidents involving Todd was corroborated by the testimony of Patricia Knippen, the Children's Services Administrator in Hardin County. Ms. Knippen recalled two interviews that she conducted with A.D. The first on May 17, 2016 and the second on May 19, 2016. She stated that the first interview with A.D. was conducted as a result of a complaint filed alleging A.D. to be a victim of sexual assault. The video recording of the first interview was played at trial and admitted as an exhibit. A.D. disclosed some incidents of Todd sexually abusing her at this time.

{¶24} During this interview, A.D. also identified on anatomical figures of an adult male and an adolescent female the genitalia and other erogenous zones. She located on the figures where Todd had touched her and where Todd had made her touch him. The drawings were admitted as exhibits at trial and were consistent with A.D.'s testimony on the stand. A.D. also provided corroborative evidence of each instance comprising the GSI counts for which the jury found Todd guilty by going into great detail of each act. A.D. estimated to Ms. Knippen that Todd touched her "private area" twenty to twenty-five times over her clothes and two times underneath her clothes. She also estimated that Todd touched her "boob" over her clothes thirty to thirty-five times and her bare "boob" twenty to twenty-five times. (State's Ex. 4 at 47:50).

{¶25} With regard to the bare skin touching, A.D. recalled Todd attempting to places his fingers in her vagina on two occasions. A.D. also described an incident in the Summer of 2015, when the family lived with their friend, where Todd attempted to insert his "pickle" into her vagina while she was taking a shower, but could not complete the act because her "hole was too small." (State's Ex. 4 at 33:12). A.D. further described instances where Todd convinced her to touch his "pickle." However, A.D. denied performing oral sex on Todd. A.D. also recalled Todd showing her pornography on multiple occasions.

**{¶26}** Ms. Knippen testified that the second interview with A.D. occurred two days later when she received a telephone call from A.D.'s elementary school. A.D. had approached a faculty member to help her contact Ms. Knippen while A.D. was at school. A.D. informed Ms. Knippen that there were additional disclosures that she needed to make. Ms. Knippen described A.D. as "fairly anxious" and arranged to meet with A.D. immediately. (Tr. Trans. Vol. 1 at 147). Ms. Knippen explained that this second interview with A.D. was not recorded due to a technical failure with the Agency's recording system. However, Ms. Knippen testified that A.D. disclosed that Todd had threatened to kill her and that she had performed oral sex on him. A.D. also recalled one instance where Todd had his "pickle" exposed and forced her face down on his penis. A.D. stated that her face touched his "pickle," but she kept her mouth shut. (State's Ex. 4 at 59:50). She recalled "white stuff" going everywhere and Todd explaining an orgasm to her.

*Analysis*

**{¶27}** On appeal, Todd contends that the jury lost its way in finding him guilty of the five offenses because A.D.'s testimony was vague and inconsistent and therefore could not be considered credible evidence to convict him.

**{¶28}** At the outset, we are mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trier of

fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986).

{¶29} Here, the record demonstrates that the jury showed a great deal of discernment in parsing out the charges for which it believed the evidence supported Todd's conviction. Notably, the jury acquitted Todd of seven counts, which included three counts of Gross Sexual Imposition, one count of Attempted Rape, one count of Rape, one count of Contributing to the Unruliness of a Minor, and one count of Disseminating Matter Harmful to Juveniles. Thus, consistent with its role as the trier of fact, the jury found A.D.'s testimony, or portions of it, credible. *See State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964) ("The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony.").

{¶30} The jury was in the best position to judge A.D.'s credibility, and the jury found A.D. to be a credible witness as to the counts for which they convicted Todd. Therefore, we cannot say the jury clearly lost its way when it found Todd guilty beyond a reasonable doubt of four counts of Gross Sexual Imposition and one

count of Disseminating Matter Harmful to Juveniles. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶31}** In his second assignment of error, Todd claims that the broad range of dates used by the prosecutor in the indictment and bill of particulars prejudiced the preparation of his defense and denied him due process of law. The record reflects that the indictment and bill of particulars refer to three time periods, "Summer of 2015," "Fall of 2015," and "Spring of 2016." (Doc. Nos. 1, 11).

*Standard of Review*

**{¶32}** The Ninth Appellate District succinctly summarized the relevant law in a similar challenge to the indictment in *State v. Young*, 9th Dist. Lorain No. 15CA010803, 2017-Ohio-1400, ¶ 8.

> **[T]he purpose of an indictment is to provide the accused with sufficient notice of the offense, including the essential elements of the crime, with which that individual is charged. [P]recise times and dates are not ordinarily essential elements of an offense[.] It has been widely held in Ohio that an indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses. Those cases often involve children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time. In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period. [T]he key issue is whether the defendant has notice of the nature of the offense and has been afforded a reasonable opportunity to make a defense.**

*Id.* (internal citations omitted).

{¶33} In addition, Ms. Knippen, the Children Services Administrator who interviewed A.D. and who testified to conducting over four hundred investigations involving child sexual abuse allegations, stated that it is common for children to be unable to give specific dates indicating when the abuse took place, especially when the abuse occurred multiple times. (Tr. Trans. Vol.1 at 171). She further stated that children typically can recall the sexual abuse in relation to an event or time period. (*Id.* at 167).

{¶34} Here, A.D. recalled specific instances of sexual abuse by Todd in conjunction with the places where she and Todd lived. For example, she identified incidents that occurred at the family friend's home, which corresponded to the Summer of 2015, and incidents that occurred when her family moved to Patterson, which corresponded to the Fall of 2015. A.D. was also able to identify particular incidents that took place after Todd had a falling out with A.D.'s father and was asked to leave the home. Todd moved into his own trailer after the New Year and A.D. was able to relay instances of sexual abuse that occurred during the late Winter and early Spring of 2016 at this location. Moreover, in addition to stating the time frame during which each offense charged in the sixteen count indictment allegedly took place, the bill of particulars also particularized Todd's conduct alleged to constitute the offense in each count; thus, providing Todd with further apprisal of

the specific charges against him as well as the discernible facts to substantiate the separate charges if proven at trial.

{¶35} Based on the foregoing, we do not find that the absence of specific dates alleged in the indictment or bill of particulars inhibited Todd from receiving adequate notice of the nature of the offenses or prejudiced Todd's ability to defend himself.   Accordingly, the second assignment of error is overruled.

{¶36} For all these reasons, the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J, concur.**

**/jlr**